UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JESUS MORALES BONET,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:26cv404 DRL-SJF |

OPINION AND ORDER

Immigration detainee Jesus Morales Bonet filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The Warden answered the petition, and Mr. Morales Bonet replied. The petition is ready to be decided.

Mr. Morales Bonet is a citizen and native of Cuba who came to the United States in 1980 as part of the Mariel Boat Lift [13-1]. In 1998, he was convicted of murder and solicitation to commit murder for hire and sentenced to 60 years and 30 years in prison respectively. After he was released from prison, United States Immigration and Customs Enforcement (ICE) obtained an administrative warrant for his arrest and arrested him on February 24, 2026. He also was issued a notice to appear, charging him with being removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) for being convicted of an aggravated felony based on the murder conviction. On June 1, 2026, Mr. Morales Bonet was ordered removed to Cuba. He waived appeal.

Mr. Morales Bonet filed a habeas petition, arguing his continued detention was unlawful because his removal was not reasonably foreseeable. He argues his removal is not reasonably foreseeable due to the difficulty of repatriation to Cuba.[1]

In answering the petition, the Warden (though his federal counsel) provides a declaration from an ICE Supervisory Detention and Deportation Officer, detailing the steps that have been taken to remove Mr. Morales Bonet from the United States [13-2]. The officer attests that around September 3, 2026, the Cuban government denied a request for travel documents for Mr. Morales Bonet. ICE then served Mr. Morales Bonet with a notice of third-country removal, which he refused to sign. The officer stated that once Mr. Morales Bonet signs the notice of third-country removal, ICE Enforcement and Removal Operations (ERO) will proceed with removal to Mexico. The Warden argues Mr. Morales Bonet has not met his burden of demonstrating that his removal is unlikely to occur in the foreseeable future because he has not shown that ICE lacks the capability to remove him to Mexico.

In reply, Mr. Morales Bonet provides documentation that, to him, shows that ICE has recommended that he be set free on supervised release. He includes a Notice to Alien of File Custody Review, informing him that his custody status will be reviewed around September 11, 2026 [15]. He also provides a notice advising him that he will not be released from custody. There is no letter recommending that he be released.

[1] The habeas petition was initially filed in March 2026 and raises additional claims that are not relevant now that his removal order has become final. The court, therefore, focuses only on the relevant claims.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Morales Bonet's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits of the petition, the court follows the analysis set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001). By statute, noncitizens who are subject to a final order of removal must be detained for a period of 90 days, during a "removal period." 8 U.S.C. §§ 1231(a)(1), (a)(2). This removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B). Mr. Morales Bonet's removal period began on June 1, 2026, when the removal order was issued and he waived his right to appeal. *See* 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. § 1241.1(b). It ended around August 30, 2026.

Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of

removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6). No one contests that Mr. Morales Bonet's criminal conviction allows him to be detained beyond the removal period.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To avoid a constitutional due process problem with § 1231(a)(6), including for a noncitizen who remains in the country after being ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91. The law materially defers this difficult judgment to the Executive Branch for a total six-month period, as detention then is considered presumptively reasonable to execute a removal order. *Id.* at 700-01.

The court has the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.* at 699; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. In this, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation

negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700.

The petitioner bears the initial burden. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). If he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86. He need not show that deportation is "impossible" or prove "the absence of *any* prospect of removal," *Zadvydas*, 533 U.S. at 702, yet he must typically offer something more than the mere passage of time. Though Congress may have "doubted the constitutionality of detention for more than six months," the passing of this presumptive six-month period "does not mean that every alien not removed must be released." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). That said, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Zadvydas*, 533 U.S. at 701.

The Warden does not argue Mr. Morales Bonet filed his petition prematurely, before the presumptively reasonable period of detention has ended. Instead, he argues that Mr. Morales Bonet has not met his initial burden to show his removal is not reasonably foreseeable. The point is well taken. Although Mr. Morales Bonet has provided good reason to believe his removal to Cuba cannot be carried out (which, in fact, was proven true when Cuba refused to issue travel documents), he says nothing about a potential removal to Mexico. His initial petition is silent on the likelihood of a removal to Mexico, which is understandable considering it was filed before removal to Mexico was a possibility. But in his reply, he is also silent about the likelihood of removal to Mexico, and he provides nothing to satisfy his initial burden to provide good reason to believe his removal there is not reasonably foreseeable.

For these reasons, the court DENIES the petition (ECF 7) and DIRECTS the clerk to close this case.

SO ORDERED.

October 16, 2026

*s/ Damon R. Leichty*
Judge, United States District Court